Laurie Hoefer, OSB 054234
laurie.hoefer@lasoregon.org
Brenda Bradley, OSB 060453
brenda.bradley@lasoregon.org
Legal Aid Services of Oregon
397 North First Street
Woodburn, OR 97071
Telephone: (503) 981-5291
Fax: (503) 981-5292

Of Attorneys for Plaintiffs

Julie R. Samples, OSB 014025
jsamples@oregonlawcenter.org
Oregon Law Center
138 NE 3rd Street, Suite 230
Gresham, OR 97030
Telephone: 503 726-4381
Fax: 503 726-4382

Stephen S. Walters, OSB 801200
swalters@oregonlawcenter.org
Oregon Law Center
522 SW 5th Ave, Suite 812
Portland, Oregon 97204
Telephone: 503 473-8311
Fax: 503 295-0676

Of Attorneys for Plaintiff
Roberto Morlans

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| Roberto Morlans,<br>Francisco Acuña,<br>Martí Ars,<br>Simón de Llamas,<br>Luciano López,<br>Pau Sáez,<br>Paola Torreño, and<br>Álvaro Vidorreta, | Case No.:<br><br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT –Page 1

Plaintiffs,

v.

Southwest Oregon Farms, LLC,
Takilma Road Operator LLC,
Takilma Road Processor, LLC,
PNW Operator LLC,
Las Lomas Butte Game Farm, LLC,
NW Operator, LLC,
Takilma Road Propco, LLC,
Matthew Portnoff,
Lucas Aranha, and
Augusto Aranha dba CJ Operator,

Defendants.

Migrant and Seasonal Agricultural
Worker Protection Act, 29 U.S.C. §1801
*et seq.,*; Fair Labor Standards Act, 29
U.S.C. §201 *et seq*.; Oregon Wage Laws,
Whistleblower Protections (ORS
659A.199), Breach of contract, and
Oregon Civil Rights laws (ORS 652.355,
ORS 659A.335, ORS 659A.030).

## I. INTRODUCTION

1.     Roberto Morlans, Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López, Pau Sáez, Paola Torreño,  and Álvaro Vidorreta**,** ("Plaintiffs"), bring this action against Southwest Oregon Farms, LLC, Takilma Road Operator LLC, PNW Operator LLC, Las Lomas Butte Game Farm, LLC, NW Operator, LLC, Takilma Road Propco, LLC, Matthew Portnoff, Lucas Aranha, and Augusto Aranha doing business as (dba) CJ Operator,  (collectively "Defendants") for violation of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq*. (hereinafter "AWPA"); Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA"), Oregon Minimum Wage Laws, ORS 653.025, Breach of Contract; Late Payment of Wage, ORS 652.145, and several Anti-Retaliation provisions including ORS 652.355, ORS 659A.355, ORS 659A.199, and ORS 659A.030.

2.     Plaintiffs are farmworkers who worked for Defendants.  Plaintiffs worked 8 to 12 hours per day, 60 to 85 hours per week, for months and have yet to be paid in full for their work

despite Defendants acknowledging wages are owed and much time having passed. Plaintiffs

suffered from unsafe work conditions. Plaintiffs felt that they had to keep working such that

they and other workers would be paid. Defendants operated unregistered labor housing at the

same location where Plaintiffs worked, and Plaintiffs lived at this housing. The housing was

inadequate and unsanitary. Plaintiffs suffered retaliation and other abuse because they asked to

be paid for their work.

## II. JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it

arises under the laws of the United States, 29 U.S.C. § 1854(a), as it arises under AWPA and

under 28 U.S.C. § 1337, as it arises under acts of Congress regulating commerce.

4.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the

claims based on Oregon law, as they are so related to claims within the Court's original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

5.      Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2)

because Josephine County is in this district and the events giving rise to Plaintiffs' claims

occurred in this district.

## III. PARTIES

6.      Roberto Morlans, Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López,

Pau Sáez, Paola Torreño, and Álvaro Vidorreta are natural persons who were employed by

Defendants in Josephine County, Oregon.

7.      At times relevant to this action, Defendant Lucas Aranha is a person who

employed Plaintiffs, and provided, leased and/or controlled Plaintiffs' migrant agricultural

housing.  He resides in Josephine County, Oregon.

8.    At times relevant to this action, Defendant NW Operator, LLC was a domestic limited liability company registered in Oregon with its principal place of business in Cave Junction, Oregon.

9.    At times relevant to this action, Defendant PNW Operator, LLC was a domestic limited liability company registered in Oregon with its principal place of business in Cave Junction, Oregon.

10.    At times relevant to this action, Defendant Las Lomas Butte Game Farm, LLC was a domestic limited liability company registered in Oregon with its principal place of business in Cave Junction, Oregon.

11.    At times relevant to this action, Matthew Portnoff is a person who employed Plaintiffs, and provided, leased, owned and/or controlled Plaintiffs' migrant agricultural housing. He resides in California.

12.    At times relevant to this action, Defendant Southwest Oregon Farms, LLC was a domestic limited liability company registered in Oregon with its principal place of business in Cave Junction, Oregon.

13.    At times relevant to this action, Defendant Takilma Road Operator, LLC was a domestic limited liability company registered in Oregon with a place of business in Cave Junction, Oregon.

14.    At times relevant to this action, Defendant Takilma Road Propco, LLC was a domestic limited liability company registered in Oregon with its principal place of business in Cave Junction, Oregon.

15.     At times relevant to this action, Defendant Takilma Road Processor, LLC was a limited liability company registered in Oregon with a place of business in Cave Junction, Oregon.

16.     At times relevant to this action, Defendant Augusto Aranha, who is a natural person, operated under the assumed business name CJ Operator with a principal place of business in Cave Junction, Oregon.  He employed Plaintiffs, and provided, leased and/or controlled Plaintiffs' migrant agricultural housing.  Augusto Aranha resides in Josephine County, Oregon.

17.     At times relevant to this action, Defendants employed at least 15 people and were engaged in an industry affecting commerce.

## IV. FACTUAL ALLEGATIONS

18.     Defendants Southwest Oregon Farms, LLC, Takilma Road Operator LLC, Takilma Road Propco, LLC, Takilma Road Processor, LLC, PNW Operator LLC, Las Lomas Butte Game Farm, LLC, NW Operator, LLC, Matthew Portnoff, Lucas Aranha, and Augusto Aranha dba CJ Operator employed Plaintiffs to perform seasonal or temporary agricultural work in 2021, 2022 and/or 2023 at a farm located at 3862/3864 Takilma Road in Cave Junction, Josephine County, Oregon.

19.     Defendants Southwest Oregon Farms, LLC, Takilma Road Operator LLC, Takilma Road Propco, LLC, PNW Operator LLC, Las Lomas Butte Game Farm, LLC, NW Operator, LLC, Takilma Road Processor, LLC and CJ Operator are part of a complex corporate structure of farms and businesses that operate at 3862/3864 Takilma Road in Cave Junction, Josephine County, Oregon and are or were owned or managed by one or more of the following individuals: Lucas Aranha, Matthew Portnoff and Augusto Aranha.

20.     Plaintiffs lived at an unregistered labor camp owned, controlled and/or operated by Defendants during the period Plaintiffs worked for Defendants.  The labor camp was located on the farm at 3862/3864 Takilma Road in Josephine County.

21.     At all relevant times, Plaintiffs received information that they were performing work for and were residing in employer-provided housing provided by multiple inter-related corporate entities and individuals, including the named Defendants.

RELATIONSHIPS BETWEEN DEFENDANT ENTITIES

22.     Defendants Lucas Aranha and Augusto Aranha managed the day-to-day employment and exercised control over the day-to-day tasks of Plaintiffs at the farm located at 3862/3864 Takilma Road, Cave Junction, Oregon.

23.     Defendant Lucas Aranha does business under several different names and entities, including Defendants PNW Operator, LLC, NW Operator LLC, and Las Lomas Butte Game Farm, LLC ("Aranha Entity Defendants").

24.     Each of the Aranha Entity Defendants lists its business address as 3862 or 3864 Takilma Road, Cave Junction, Oregon and names or named Defendant Lucas Aranha as its owner, managing member and/or registered agent.

25.     On information and belief, Defendant Lucas Aranha used some or all of the Aranha Entity Defendants to employ Plaintiffs and to commit and/or to help to commit the statutory violations and other wrongful acts described in this Complaint.

26.     Defendant Matthew Portnoff does business under several different names and entities, including Southwest Oregon Farms, LLC, Takilma Road Operator, LLC, Takilma Road Processor, LLC, and Takilma Road Propco, LLC ("Portnoff Entity Defendants").

27.     Each of the Portnoff Entity Defendants lists as one of its business addresses as

3862 and/or 3864 Takilma Road, Cave Junction, Oregon and names or named Defendant

Matthew Portnoff as its owner, managing member and/or registered agent.

28.     At all relevant times, Defendant Southwest Oregon Farms, LLC owned all or part

of the property where Plaintiffs worked for Defendants and where Plaintiffs lived while working

for Defendants.

29.     At relevant times, Defendant Southwest Oregon Farms, LLC provided, leased,

owned and/or controlled Plaintiffs' migrant agricultural housing.

30.     At all relevant times, Defendant Takilma Road Propco, LLC owned part or all the

property where Plaintiffs worked for Defendants and where Plaintiffs lived while working for

Defendants.

31.     At all relevant times, Defendant Takilma Road Propco, LLC provided, leased,

owned and/or controlled Plaintiffs' migrant agricultural housing.

32.     At times relevant to this action, Defendant Lucas Aranha served as manager and

representative of Southwest Oregon Farms, LLC.

33.     At times relevant to this action, Defendant Augusto Aranha served as facility

manager of Southwest Oregon Farms, LLC.

34.     At times relevant to this action, Defendant Lucas Aranha was an agent of

Matthew Portnoff and Portnoff related Entities.

35.     At times relevant to this action, Defendant Augusto Aranha was an agent or

representative of Southwest Oregon Farms, LLC and Takilma Road Operator, LLC.

36.     On information and belief, Defendant Matthew Portnoff used some or all the

Portnoff Entity Defendants and/or his agent, Lucas Aranha, to employ Plaintiffs and to commit

and/or to help to commit the statutory violations and other wrongful acts described in this

Complaint.

37.    At times relevant to this action, Defendant Lucas Aranha was alter ego to PNW Operator, LLC, NW Operator, LLC and Las Lomas Butte Game Farm, LLC.

38.    At times relevant to this action, Defendant Matthew Portnoff was the alter ego to Defendants Southwest Oregon Farms, LLC, Takilma Road Operator, LLC, Takilma Road Processor, LLC and Takilma Road Propco, LLC.

39.    At times relevant to this action, Defendant Matthew Portnoff was the alter ego of the other Defendants.

40.    At times relevant to this action, Defendants jointly employed Plaintiffs.

41.    Despite performing work for multiple corporate entities, Defendants failed to maintain separate timekeeping, piece rate records, and/or pay records for Plaintiffs' work.

42.    At times relevant to this action, Defendants operated businesses on the property or properties where Plaintiffs worked.

CONTRACTS FORMED AND WORK PERFORMED

43.    Under the terms of oral employment contracts, Defendants offered to pay each Plaintiff $16 per hour for field work that was non-piece rate work.

44.    Under the terms of oral employment contracts, Defendants offered to pay Plaintiffs $8 per unit, $10 per unit and $50 per unit (and up to $100 per unit for Plaintiffs Marti Ars and Álvaro Vidorreta) for different kinds of piece rate work.

45.    Each Plaintiff accepted Defendants' offers and performed seasonal agricultural labor for Defendants as agreed.

46.    Plaintiffs regularly worked 8 to 12 hours per day, 60 to 85 hours per week for Defendants.

47.     Plaintiff Roberto Morlans worked for Defendants from approximately May 5, 2022 to December 13, 2022.  He worked approximately a total of 1995 hours at $16 per hour. He earned a total of $31,200 under the terms of the contract.

48.     Plaintiff Francisco Acuña worked for Defendants from approximately June 18, 2022 to December 12, 2022. He worked a total of 1571 hours for Defendants, including 1133.70 hours of field work at $16 per hour and 49.20 of $50 per unit piece rate work, 273.66 of $10 per unit piece rate work and 53.61 of $8 per unit piece rate work. He earned a total of $23,764.68 under the terms of the contract.

49.     Plaintiff Martí Ars worked for Defendants from approximately October 29, 2021 to November 29, 2021.  He worked approximately a total of 258 hours for Defendants, including 146.11 hours of field work at $16 per hour, and 14.39 units of $65 per unit piece rate work.   He earned a total of $3272.79 under the terms of the contract.

50.     Plaintiff Simón de Llamas worked for Defendants from approximately July 15, 2022 to December 10, 2022.  He worked approximately 1,327 hours for Defendants in total, including 1200 hours of field work at $16 per hour and approximately 58 units of $50 per unit piece work and 230 units of $10 per unit piece rate work. He earned a total of $24,400 under the terms of the contract.

51.     Plaintiff Luciano López worked for Defendants from September 27, 2022 to January 20, 2023. He worked approximately a total of 1,000 hours for Defendants, including approximately 352.49 hours of field work at $16 per hour, and 156.55 units at $50 per unit piece rate work, 140.48 units of $8 per unit piece rate work, and 206.39 units of $10 per unit piece rate work.  He earned a total of $16,655.08 under the terms of the contract.

52.     Plaintiff Pau Sáez worked for Defendants from approximately October 3, 2022 to

January 10, 2023.  He worked approximately a total of 930 hours, including 100 hours of field work at $16 per hour and approximately 135.80 units of $50 per unit piece rate work, and 262.93 units of $10 per unit piece rate work.  He earned a total of $11,019.30 under the terms of the contract.

53.     Plaintiff Paola Torreño worked for Defendants from approximately October 3, 2022 to January 10, 2023.  She worked approximately a total of 930 hours for Defendants, including 100 hours of field work at $16 per hour and approximately 135.80 units of $50 per unit piece rate work, and 262.93 units of $10 per unit piece rate work. She earned a total of $11,019.30 under the terms of the contract.

54.     Plaintiff Álvaro Vidorreta worked for Defendants from approximately July 28, 2021 to July 18, 2022.  He worked approximately a total of 3672 hours, including approximately 2015 hours of field work at $16 per hour, 49 units of $50 - $100 per unit piece rate work and 42.33 units of $10 per unit piece rate work.  He earned a total of $36,425.80 under the terms of the contract.

FAILURE TO PAY FOR ALL WORK PERFORMED

55.     At all relevant times, Plaintiffs were seasonal agricultural workers within the meaning of ORS 652.145 in that they performed temporary labor for another in the production of farm products or in the harvesting of seasonal agricultural crops for an agreed remuneration.

56.     Defendants promised to pay Plaintiffs every three weeks.

57.     Defendants failed to pay Plaintiffs every three weeks.

58.     Plaintiffs' employment with Defendants terminated.

59.     Plaintiffs' employment with Defendants had rolling end dates, with the final date of employment of January 26, 2023.

60.     On each of their final day of work, no Plaintiff received full payment of wages due and owed to them by Defendants.

61.     Defendants did not pay Plaintiffs all earned and unpaid wages within 48 hours of their termination of their employment.

62.     Plaintiffs were entitled to receive at least the Oregon minimum wage for each hour worked.

63.     Defendants failed to pay Plaintiffs the Oregon minimum wage in at least one pay period.

64.     Plaintiffs were entitled to receive at least the federal minimum wage for each hour worked.

65.     Defendants failed to pay Plaintiffs Roberto Morlans, Marti Ars, Luciano Lopez, Pau Saez, Alvaro Vidorreta and Paola Torreno the federal minimum wage in at least one pay period.

66.     More than thirty days have passed since Plaintiffs' employment with the Defendants terminated.

67.     In letters addressed to Defendants dated February 15, 2023, March 2, 2023, March 3, 2023, March 16, 2023, and August 30, 2023, Plaintiffs through their lawyers made a request in writing to be paid their unpaid wages in full.

68.     In response to Plaintiffs' February and March demand letters, Defendant Lucas Aranha responded by paying the following amounts to the following Plaintiffs on or about March 27, 2023: $999.99 to Roberto Morlans, $999.99 to Francisco Acuña, $999.99 to Martí Ars, $1,000.00 to Simón de Llamas, $1,000.00 to Luciano López, $1,000.00 to Pau Sáez, $1,000.00 to Paola Torreño, and $999.99 to Álvaro Vidorreta.

69.     Defendant Lucas Aranha sent communication to Plaintiffs' counsel on or about May 2023 admitting that Plaintiffs were not paid in full for the work they performed at 3862/3864 Takilma Road and communicating the amounts he calculates each Plaintiff is still owed.

70.     Defendants have made no other payments by the time of this filing.

71.     Defendants breached Plaintiffs' contract rights by failing to pay them the promised amounts for work performed.

72.     Plaintiffs were damaged by Defendants' failure to pay for the work completed under the contract.

73.     As of this date, Defendants have paid Plaintiff Roberto Morlans a total of $12,734.00.

74.     Roberto Morlans suffered damages of approximately $18,466 in unpaid contract wages.

75.     As of this date, Defendants have paid Plaintiff Francisco Acuña a total of $18,960.

76.     Plaintiff Francisco Acuña suffered damages of approximately $4804.68 in unpaid contract wages.

77.     As of this date, Defendants have paid Plaintiff Martí Ars a total of $1799.99.

78.     Plaintiff Martí Ars suffered damages of approximately $1472.80 in unpaid contract wages.

79.     As of this date, Defendants have paid Plaintiff Simón de Llamas a total of $15,075.

80.     Plaintiff Simón de Llamas suffered damages of approximately $9325 in unpaid

contract wages.

81.    As of this date, Defendants have paid Luciano Lopez a total of $2500.

82.    Plaintiff Luciano Lopez suffered damages of approximately $14,155.08 in unpaid

contract wages.

83.    As of this date, Defendants have paid Plaintiff Pau Sáez a total of $2,100.00.

84.    Plaintiff Pau Sáez suffered damages of approximately $8,919.30 in unpaid

contract wages.

85.    As of this date, Defendants have paid Plaintiff Paola Torreño a total of

approximately $2,100.00.

86.    Plaintiff Paola Torreño suffered damages of approximately $8,919.30 in unpaid

contract wages.

87.    As of this date, Defendants have paid Plaintiff Álvaro Vidorreta  a total of

approximately $16,499.99.

88.    Plaintiff Álvaro Vidorreta suffered damages of approximately $19,925.81 in

unpaid contract wages.

89.    Plaintiffs have continued to demand the full payment of all contract wages due

from Defendants.

90.    At least 20 days before the filing of this action, on February 15, 2023, March 2,

2023, March 3, 2023, March 6, 2023, March 16, 2023, and August 30, 2023, Plaintiffs, through

counsel, sent a written demand for their contract wage damages.

91.    To date, Defendants have not tendered full payment of wages owed to Plaintiffs.

92.    Defendants have willfully failed to pay Plaintiffs their wages when due.

93.    Defendants continue to promise wages they agree are owed but have not paid any

additional sums owed since March 2023.

94.    Defendants failed to comply with their repeat promises regarding wage payments.

RETALIATION FOR MAKING WAGE CLAIMS

95.    Plaintiffs regularly asked Defendants through Defendant Lucas Aranha for their unpaid wages throughout their employment and after their employment terminated.

96.    Plaintiffs made good faith reports of information related to untimely payment of wages that they believed was evidence of violation of state and/or federal laws.

97.    When some Plaintiffs asked for their wages, Defendant Lucas Aranha said the workers needed to work harder for him to be able to pay them.

98.    Defendant Lucas Aranha told workers in the Fall of 2022, "[I]f you stop working, no one will get paid."

99.    When Plaintiff Luciano López begged Defendant Lucas Aranha for small amounts of money to buy food for the workers, Defendant Lucas Aranha berated him and questioned him about how he was going to use the money.

100.    When Defendant Lucas Aranha paid Plaintiffs Paola Torreño and Pau Sáez small amounts of their wages in late Fall 2022, he made them sign a piece of paper before he would give them their money.  They were not sure how the papers would be used, and they were worried that these papers might negatively impact their rights, but they felt they had to sign the papers to be paid even a small sum.

101.    Defendant Lucas Aranha made Plaintiffs believe that they would not get their pay if they did not continue to work increasingly throughout their employment.

102.    Defendant Lucas Aranha made threats to kill Plaintiffs Francisco Acuña and

Roberto Morlans if they pursued their claims against him and the other Defendants around December 2022.

103.    In late Fall 2022, Defendant Lucas Aranha told workers including some Plaintiffs to tell him when they planned to leave and that he would pay them before they left.

104.    Plaintiffs told Defendant Lucas Aranha the dates they planned to leave.

105.    Plaintiffs made travel arrangements for the dates they planned to leave.

106.    When the workers' dates of departure arrived, Defendant Lucas Aranha failed to pay them.

107.    Plaintiffs suffered damages when not able to leave on the date they planned because they feared that they would not be paid if they left the premises.

108.    At the end of January 2023, Plaintiffs Roberto Morlans, Luciano López, Pau Sáez, and Paola Torreño remained on the property waiting to be paid their wages.  They were desperate and had no resources to leave or to meet their basic needs.

109.    Defendant Lucas Aranha threatened Plaintiffs Paola Torreño, Pau Sáez, Roberto Morlans, and Luciano López that he would call law enforcement and that they would get in trouble with law enforcement if they remained on the property asking for and waiting to be paid their wages.

110.    Plaintiffs' counsel contacted Defendant Lucas Aranha on behalf of Plaintiff Roberto Morlans about Mr. Morlans' claims on or about January 27, 2023 by telephone.

111.    On or about the evening of January 27, 2023 or January 28, 2023, Plaintiffs Roberto Morlans, Luciano López, Pau Sáez, and Paola Torreño received a 24-hour eviction notice from Defendant Matthew Portnoff's attorney on behalf of Matthew Portnoff.

112.    As a result of Defendants' actions, Plaintiffs Roberto Morlans, Luciano López,

Pau Sáez, and Paola Torreño were evicted from the labor camp located at 3862/3864 Takilma Road, Cave Junction.

113.    As a result of Defendants' actions, Plaintiffs have been aggrieved and suffered emotional distress.

114.    Defendant Lucas Aranha regularly threatened workers including Plaintiffs that if anyone sued him that he would not pay any of the workers.

115.    Defendant Lucas Aranha regularly threatened workers including Plaintiffs with adverse actions when they inquired about their wages.

116.    In December and January 2023, Defendant Lucas Aranha threatened Plaintiffs Simón de Llamas, Pau Sáez and Paola Torreño that if they did anything [to pursue their wages/claims], no one would get paid.

117.    In about May 2023, Defendant Lucas Aranha told Plaintiffs Roberto Morlans, Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López, Pau Sáez, Paola Torreño, and Álvaro Vidorreta through their counsel, that he agreed he owed Plaintiffs some wages and said that he would pay those wages over a period of months.

118.    On or about June 28, 2023, Defendant Lucas Aranha threatened to stop any payments on the amounts he agreed he owes if Plaintiffs pursued their claims in court after Plaintiffs through counsel continued to ask for the wages they were owed and stated that they may take other actions to enforce their rights and pursue their claims including going to court.

119.    In response to Plaintiffs' wage inquiries and claims, Defendants intimidated, threatened and verbally harassed some Plaintiffs, threatened Plaintiffs Francisco Acuña and Roberto Morlans with bodily harm and death, evicted some Plaintiffs, and threatened non-payment of wages admittedly owed if Plaintiffs pursue their claims.

120.    Defendants treated Plaintiffs adversely for making such wage inquiries in that they verbally abused Plaintiffs for asking for their wages, threatened some Plaintiffs with bodily harm and death and evicted some Plaintiffs after being contacted by counsel.

121.    Defendants treated Plaintiffs adversely for making such good faith reports of information that they believed was evidence of violations of state and/or federal law.

HOUSING CONDITIONS

122.    At all times relevant to this action, Plaintiffs were migrant agricultural workers, pursuant to 29 U.S.C § 1802(8), in that they were required to be absent overnight from their permanent places of residence and performed agricultural labor of a seasonal or temporary nature on a farm.

123.    At all relevant times, Defendants were agricultural employers under AWPA, 29 U.S.C. § 1802(2) who employed Plaintiffs and provided, leased, owned and/or controlled migrant agricultural worker housing, 29 U.S.C. § 1821(c) and § 1823.

124.    Defendants failed to ensure that its labor camp housing on the farm met substantive health and safety standards in housing at the labor housing as required by 29 U.S.C. § 1823(a).

125.    Many of the Plaintiffs had to sleep in tents, the warehouse, in structures not designed to house people, or in their vehicles at Defendants' labor camp because the sleeping quarters were insufficient to house all the workers.

126.    Defendants did not provide Plaintiffs with sufficient protection against the elements, including heat or ventilation.

127.    Defendant Augusto Aranha refused to allow Plaintiff Francisco Acuña to use the heater he bought to protect himself against the elements because he said the heater used too

much electricity.

128.    Defendants failed to provide adequate toilet, bathing or kitchen facilities. Often, over 20 to 40 workers had to share one kitchen, one toilet and one shower at Defendants' labor camp.

129.    Defendants did not maintain the one toilet in working order.

130.    Defendants' labor camp had excess garbage and rats.

131.    Defendants had menacing dogs in and about the labor camp housing.  The presence of the dogs caused workers to live in fear.  Defendants' dogs bit many Plaintiffs, including Francisco Acuña, Martí Ars, Simón de Llamas, and Paola Torreño, and/or caused them to flee in fear.

132.    Some Plaintiffs regularly reported the dog bites to Defendant Lucas Aranha.

133.    Defendants failed to provide medical care upon such reports of dog bites.

134.    Defendants failed to ensure that Plaintiffs' housing met all substantive federal and state health and safety standards as required by 8 U.S.C. § 1823 (b).

135.    Defendants failed to have an appropriate federal, state or local agency certify that the facility complies with Federal and State health and safety standards before allowing any workers to occupy the housing as required by 29 U.S.C. § 1823(b)(1); 29 C.F.R. § 500.135.

136.    Defendants failed to post the certificate of compliance with federal and state health and safety standards at the Plaintiffs' labor housing as required by 29 U.S.C. § 1823 (b).

OTHER WORKPLACE VIOLATIONS

137.    Defendants failed to meet health and safety standards in their work conditions on the farm.

138.    Defendants failed to provide Plaintiffs adequate access to drinking water, toilets and handwashing stations.

139.    Many of the Plaintiffs had on-the-job injuries while working for Defendants, including but not limited to Plaintiff Francisco Acuña.

140.    Defendants failed to provide adequate medical attention to injured or sick workers or provide information regarding provision of state workers' compensation insurance.

141.    Defendants failed to file claims for workers compensation protections for these workers.

142.    Because Defendants failed to pay Plaintiffs their wages when due, Plaintiffs often did not have sufficient funds to purchase food.  Plaintiffs were often hungry and did not receive adequate nutrition.  Plaintiffs suffered emotional and physical harm due to hunger and inadequate nutrition.

143.    Defendants knew or should have known that Plaintiffs were suffering from inadequate nutrition and other harms due to non-payment of wages.

144.    Defendants knew or should have known Plaintiffs were suffering from unsafe and unhealthy housing.

145.    Defendants knew or should have known Plaintiffs were suffering from unsafe and unhealthy work conditions.

146.    Defendants failed to make, keep, and preserve the payroll information set forth in 29 U.S.C. § 1821 (d)(1) and 29 CFR § 500.80(a) regarding the work performed for them by Plaintiffs.

147.    Defendants failed to provide Plaintiffs with itemized wage statements for each pay period that set forth all the information described in 29 U.S.C. § 1821(d)(2).

148.    Defendants intimidated, threatened, discharged, and discriminated against plaintiffs for asserting their rights under AWPA when they said they would not pay Plaintiffs'

wages, despite admitting wages were owed, if they pursued their wage claims in court, and when

Defendants evicted some of the Plaintiffs after asking about their wages and made negative

comments and threats to some of the Plaintiffs after Plaintiffs asked when their unpaid wages

would be paid.

149.    Defendants failed to post in a conspicuous place on their farm a poster issued by

the Secretary of Labor setting forth the rights and protections of migrant farmworkers under the

AWPA as described in 29 U.S.C. § 1821(b).

150.    Defendants failed to provide or post housing terms and conditions of occupants in

the labor housing on their farm as described in 29 U.S.C. § 1821(c).

151.    Defendants knowingly misrepresented terms and conditions of employment in

violation of 29 U.S.C. § 1821(f) in that they promised workers that they would be paid every

three weeks but did not fulfill that promise among other misrepresentations.

152.    Defendants failed to obtain and post a certificate of occupancy at the labor

housing on their farm in violation of 29 U.S.C. § 1823(b).

153.    Defendants violated working arrangements with plaintiffs in violation of 29

U.S.C. § 1822(c) by failing to pay wages owed when due, failing to pay when they promised to

pay, failing to comply with state and federal housing standards, failing to allow injured Plaintiffs

to make claims for workers' compensation and failing to comply with health and safety standards

in the workplace.

154.    The violations of the AWPA and its attendant regulations were the natural

consequences of the deliberate and conscious actions of the Defendants and were therefore

intentional within the meaning of the AWPA, 29 U.S.C. § 1854 (c)(1).

155.    Plaintiffs have attempted in good faith to resolve the issues in dispute without

litigation as required by 29 U.S.C. § 1854(c)(2).

156.    Defendants, individually and/or collectively, aided and abetted in committing,

facilitating, and permitting these abuses to occur and aided and abetted in creating the

environment that permitted these abuses to occur and continue to occur.

### V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Migrant and Seasonal Agricultural Workers Protection Act (AWPA)

157.    Paragraphs 1 to 156 are adopted by reference.

158.    Defendants failed to pay all Plaintiffs their wages when due in violation of 29

U.S.C. § 1822(a).

159.    Defendants violated without justification the terms of its working arrangement

with all Plaintiffs in violation of 29 U.S.C. § 1822(c) by failing to pay Plaintiffs every three

weeks, failing to provide adequate housing, and failing to provide safe working conditions.

160.    Defendants knowingly provided false or misleading information to Plaintiffs

concerning the terms, conditions or existence of employment available in violation of 29 U.S.C.

§ 1821(f) by failing to pay them every three weeks or when otherwise promised among other

misrepresentations.

161.    Defendants intimidated, threatened, discharged, and discriminated against

plaintiffs for asserting their rights under AWPA in violation of 29 U.S.C. § 1855(a) when they

said they would not pay wages they admitted they owed Plaintiffs if Plaintiffs pursued their

claims in court; when they evicted some of the Plaintiffs for asking about wages owed to those

Plaintiffs; and when they made threats and other disparaging comments to Plaintiffs who asked

Defendants when they would be paid.

162.    Defendants failed to make, keep and preserve payroll records required by 29

U.S.C. § 1821(d)(1) including failed to keep accurate records of all hours Plaintiffs worked.

163.     In violation of 29 U.S.C. § 1821 (d) and its attendant regulation, 29 CFR § 500.80 (d), Defendants failed to provide Plaintiffs at each pay period with an itemized written statement containing the payroll and other information required to be disclosed by AWPA and its regulations.

164.     Defendants failed to ensure that Plaintiffs' housing met all substantive federal and state health and safety standards in violation of 29 U.S.C. § 1823 (a).

165.     Defendants failed to have an appropriate federal, state or local agency certify that the facility complies with Federal and State health and safety standards before allowing any workers to occupy the housing in violation of 29 U.S.C. § 1823(b)(1); 29 C.F.R. § 500.135.

166.     Defendants failed to post the certificate of compliance with federal and state health and safety standards at the Plaintiffs' labor housing in violation of 29 U.S.C. § 1823 (b).

167.     Defendants failed to provide or post housing terms and conditions of occupants in the labor housing in violation of 29 U.S.C. § 1821(c).

168.     Defendants failed to obtain and post a certificate of occupancy at the labor housing on their farm in violation of 29 U.S.C. § 1823 (b).

169.     In violation of 29 U.S.C. § 1821(b), Defendants failed to post in a conspicuous place at the place of employment a poster setting forth the rights and protections afforded to workers under AWPA.

170.     As a result of the violations of AWPA and its attendant regulations, the Plaintiffs have suffered damages for which they are entitled to recover pursuant to 29 U.S.C. § 1854 (c)(1).

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**

171.    Paragraphs 1 to 94 are adopted by reference.

172.    Plaintiffs accepted the terms of the contract offered by Defendants by performing labor for Defendants.

173.    An employment contract existed between each Plaintiff and Defendants for work Plaintiffs performed.

174.    Defendants breached its contracts with Plaintiffs by failing to pay Plaintiffs all wages at the rates promised.

175.    Plaintiffs claim damages for the difference between what they were promised to be paid for work performed and the amount Defendants paid them for work performed.

176.    Plaintiff Roberto Morlans suffered damages of approximately $18,466 in unpaid contract wages.

177.    Plaintiff Francisco Acuña suffered damages of approximately $4804.68 in unpaid contract wages.

178.    Plaintiff Martí Ars suffered damages of approximately $1472.80 in unpaid contract wages.

179.    Plaintiff Simón de Llamas suffered damages of approximately $9325 in unpaid contract wages.  Luciano Lopez suffered damages of approximately $14,155.08 in unpaid contract wages.

180.    Plaintiff Pau Sáez suffered damages of approximately $8,919.30 in unpaid contract wages.

181.    Plaintiff Paola Torreño suffered damages of approximately $8,919.30 in unpaid contract wages.

182.    Plaintiff Álvaro Vidorreta suffered damages of approximately $19,925.81 in

unpaid contract wages.

183.    Plaintiffs other than Roberto Morlans and Álvaro Vidorreta are entitled to reasonable attorney fees under ORS 20.082.

### THIRD CLAIM FOR RELIEF
### Violations of Oregon's Timely Payment of Wages Law

184.    Paragraphs 1 to 94 are adopted by reference.

185.    Defendants failed to pay Plaintiffs all of their wages when due upon termination of their employment within the time specified in ORS 652.145.

186.    Defendants' failure to pay Plaintiffs all of their wages upon termination of employment was willful.

187.    Plaintiffs are entitled under ORS 652.150 to recover statutory penalty damages in an amount equal to 240 times their hourly rate, plus reasonable attorneys' fees and costs for Defendants' failure to pay Plaintiffs' wages upon termination.

### FOURTH CLAIM FOR RELIEF
### Fair Labor Standards Act

188.    Paragraphs 1 to 94 are adopted by reference.

189.    In violation of 29 U.S.C. § 206(a)(1), Defendants failed to pay Plaintiffs Roberto Morlans, Martí Ars, Luciano López, Pau Sáez, Paola Torreño, and Álvaro Vidorreta the federal minimum wage of $7.25 for each hour of work Plaintiffs performed for Defendants in 2021, 2022 and/or 2023.

190.    Plaintiffs Roberto Morlans, Martí Ars, Luciano López, Pau Sáez, Paola Torreño, and Álvaro Vidorreta are entitled to receive their unpaid federal minimum wages and an additional amount equal to Plaintiffs' late or unpaid federal minimum wages as liquidated damages pursuant to 29 U.S.C. § 216(b) and reasonable costs and attorney's fees.

**FIFTH CLAIM FOR RELIEF**
**Oregon Minimum Wage**

191.    Paragraphs 1 to 94 are adopted by reference.

192.    From July 1, 2020 to June 30, 2021, the minimum wage in Josephine County was $12.00 per hour; from July 1, 2021 until June 30, 2022, the minimum wage in Josephine County was $12.75 per hour; from July 1, 2022 until June 30, 2023, the minimum wage in Josephine County was $13.50 per hour.

193.    Plaintiff Roberto Morlans worked approximately 518.7 hours when the Oregon minimum wage was $12.75 per hour and approximately 1476.3 hours when the Oregon minimum wage was $13.50 per hour.

194.    Plaintiff Francisco Acuña worked approximately 117 hours when the Oregon minimum wage was $12.75 per hour and approximately 1454 hours when the Oregon minimum wage was $13.50 per hour.

195.    Plaintiff Martí Ars worked approximately 258 hours dwhen the Oregon minimum wage was $12.75 per hour.

196.    Plaintiff Simón de Llamas worked approximately 1,327 hours when the Oregon minimum wage was $13.50 per hour.

197.    Plaintiff Luciano López worked approximately 1000 hours when the Oregon minimum wage was $13.50 per hour.

198.    Plaintiff Pau Sáez worked approximately 930 hours when the Oregon minimum wage was $13.50 per hour.

199.    Plaintiff Paola Torreño worked approximately 930 hours when the Oregon minimum wage was $13.50 per hour.

200.    Plaintiff Álvaro Vidorreta worked approximately 3480 hours when the Oregon

minimum wage was $12.75 per hour and approximately 192 hours when the Oregon minimum wage was $13.50 per hour.

201.    In violation of ORS 653.025, Defendants failed to pay Plaintiffs the Oregon minimum wage for the work Plaintiffs performed in 2021, 2022 and/or 2023.

202.    In violation of ORS 652.150, Defendant failed to pay Plaintiffs all wages due at the termination of their employment.

203.    Plaintiffs are entitled to receive the amount of unpaid Oregon minimum wages, statutory damages pursuant to ORS 652.150 and reasonable attorney fees pursuant to ORS 653.055(4).

## SIXTH CLAIM FOR RELIEF
### Retaliation for Filing a Wage Claim (ORS 652.355)

204.    Paragraphs 1 to 121 are adopted by reference.

205.    Defendant Lucas Aranha unlawfully retaliated against Roberto Morlans, Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López, Pau Sáez, Paola Torreño, and Álvaro Vidorreta for making wage claims by intimidating and verbally harassing them in violation of ORS 652.355.

206.    Defendants Lucas Aranha unlawfully retaliated against Plaintiffs Francisco Acuña and Roberto Morlans by threatening them with bodily harm and death after they made wage claims in violation of ORS 652.355.

207.    Defendants, including Defendants Lucas Aranha and Matthew Portnoff, unlawfully retaliated against Plaintiffs Roberto Morlans, Luciano López, Pau Sáez, and Paola Torreño by evicting them in violation of ORS 652.355.

208.    Defendants unlawfully retaliated against all Plaintiffs by threatening them with non-payment of wages admittedly owed and other adverse actions if Plaintiffs pursued their

claims in violation of ORS 652.355.

209.    As a result of Defendants' actions, Plaintiffs have been aggrieved and have

suffered emotional distress and are each entitled to receive their actual damages, and attorney

fees pursuant to ORS 659A.885.

## SEVENTH CLAIM FOR RELIEF
### Retaliation for Inquiring about Wages (ORS 659A.355)

210.    Paragraphs 1 to 121 are adopted by reference.

211.    Defendant Lucas Aranha unlawfully retaliated against Roberto Morlans,

Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López, Pau Sáez, Paola Torreño, and

Álvaro Vidorreta for inquiring about their wages by intimidating and verbally harassing them in

violation of ORS 659A.355.

212.    Defendants Lucas Aranha unlawfully retaliated against

Plaintiffs Francisco Acuña and Roberto Morlans by threatening them with bodily harm and death

after they inquired about their wages in violation of ORS 659A.355.

213.    Defendants Lucas Aranha and Matthew Portnoff unlawfully retaliated against

Plaintiffs Roberto Morlans, Luciano López, Pau Sáez, and Paola Torreño for inquiring about

their wages by evicting them in violation of ORS 659A.355.

214.     Defendants unlawfully retaliated against all Plaintiffs by threatening them with

non-payment of wages admittedly owed and other adverse actions if Plaintiffs pursued or

inquired about their wages in violation of ORS 659A.355.

215.    As a result of Defendants' actions, Plaintiffs have been aggrieved and suffered

emotional distress and are each entitled to receive their actual damages, and attorney fees

pursuant to ORS 659A.885.

## EIGHTH CLAIM FOR RELIEF

**Violations of Whistleblower Protections (ORS 659A.199)**

216.    Paragraphs 1 to 121 are adopted by reference.

217.    Defendants treated Plaintiffs adversely and unlawfully retaliated against them for making good faith reports of information that they believed was evidence of violations of state and/or federal law in violation of ORS 659A.199.

218.    Defendant Lucas Aranha unlawfully retaliated against Roberto Morlans, Francisco Acuña, Martí Ars, Simón de Llamas, Luciano López, Pau Sáez, Paola Torreño,  and Álvaro Vidorreta for making good faith reports of information that Plaintiffs believed was evidence of violations of state and/or federal law by intimidating and verbally harassing Plaintiffs in violation of ORS 659A.199.

219.    Defendants Lucas Aranha unlawfully retaliated against Plaintiffs Francisco Acuña and Roberto Morlans by threatening them with bodily harm and death after they made good faith reports of information that they believed was evidence of violations of state and/or federal law in violation of ORS 659A.199.

220.    Defendants Lucas Aranha and Matthew Portnoff unlawfully retaliated against Plaintiffs Roberto Morlans, Luciano López, Pau Sáez, and Paola Torreño for making good faith reports of information that they believed was evidence of violations of state and/or federal law by evicting them in violation of ORS 659A.199.

221.     Defendants unlawfully retaliated against all Plaintiffs by threatening them with non-payment of wages admittedly owed and other adverse actions because Plaintiffs making good faith reports of information that they believed was evidence of violations of state and/or federal law in violation of ORS 659A.199.

222.     As a result of Defendants' actions, Plaintiffs have been aggrieved and suffered

emotional distress and are each entitled to receive their actual damages, and attorney fees pursuant to ORS 659A.885.

## NINTH CLAIM FOR RELIEF
### Aiding and Abetting in the commission of unlawful employment practices
### (ORS 659A.030(1)(g))

223.    Paragraphs 1 to 222 are adopted by reference.

224.    Defendants aided and abetted in the unlawful employment practices committed against Plaintiffs as described above in violation of ORS 659A.030 (g).

225.    As a result of Defendants' actions, Plaintiffs have been aggrieved and suffered emotional distress and other harms and are each entitled to receive their actual damages, and attorney's fees pursuant to ORS 659A.885.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.    **On Plaintiffs' First Claim for Relief (AWPA)**, award each Plaintiff his or her actual damages or statutory damages of $500.00 per violation, whichever is greater, for each of Defendants' violations of the AWPA pursuant to 29 U.S.C. § 1854(c)(1).

2.    **On Plaintiffs' Second Claim for Relief (Contract),** award Plaintiffs actual damages for Defendants' breach of contract; enter judgment in favor of owed contract wages in the amount of: Roberto Morlans - $18,466, Francisco Acuña - $4804.688, Martí Ars - $1,472.80,  Simón de Llamas - $9325.00, Luciano López -$14,155.08, Pau Sáez - $8,919.30, Paola Torreño -$8919.30, and Álvaro Vidorreta - $19, 925.81, or such further amounts as are shown at trial;

3.    **On Plaintiffs' Third Claim for Relief (Failure to Pay Wages Timely),** enter

judgment in favor of Plaintiffs and against Defendants and award each Plaintiff civil penalties in the amount of 240 times Plaintiff's hourly wage (240 x $16 per hour = $3840) pursuant to ORS 652.150 for failure to pay Plaintiffs' wages promptly upon termination and their violation of ORS 652.145.

4.      **On Plaintiffs' Fourth Claim for Relief (Federal Minimum Wage under Fair Labor Standards Act),** enter judgment in favor of Plaintiffs Roberto Morlans, Martí Ars, Luciano López, Pau Sáez, Álvaro Vidorreta and Paola Torreño and against Defendants for their violations of 29 U.S.C. § 206(1)(a), in the amount of Plaintiffs' unpaid federal minimum wages as follows: in favor of Roberto Morlans $1729.75 in unpaid federal minimum wages, Plaintiff Martí Ars $70.51 in unpaid federal minimum wages, Plaintiff Luciano López $6250 in unpaid federal minimum wages, Plaintiff Pau Sáez $4642.50 in unpaid federal minimum wages, Plaintiff Paola Torreño $4642.50 in unpaid federal minimum wages, Plaintiff Álvaro Vidorreta $10,122.01 in unpaid federal minimum wages or such further amounts shown at trial; and an additional amount equal to Plaintiffs' late or unpaid federal minimum wages as liquidated damages pursuant to 29 U.S.C. § 216(b).

5.      **On Plaintiffs' Fifth Claim for Relief (Oregon Minimum Wages)**, enter judgment in favor of Plaintiffs and against Defendants for their violations of ORS 653.025, in the amount of each Plaintiffs' unpaid Oregon minimum wages and civil statutory damages of $3240 per Plaintiff except for Plaintiff Martí Ars who claims statutory damages of $3060 pursuant to ORS 653.055(1)(a), 653.055(1)(b) and 652.150. Award their unpaid Oregon minimum wages as follows: Roberto Morlans - $13,809.48, Francisco Acuña - $2160.75, Martí Ars - $1489.51, Simón de Llamas -$2839.50, Luciano

López - $7385.00, Pau Sáez - $10,455.00, Paola Torreño - $10,455.00, and Álvaro Vidorreta - $30,462.01 or such further amounts shown at trial.

6.      **On Plaintiffs' Sixth, Seventh, and Eighth claims (Retaliation Claims),** enter judgment against Defendants and in favor of Plaintiffs for compensatory damages of at least $25,000 per Plaintiff, or such other amounts shown at trial or, in the alternative, statutory damages of $200 per violation, pursuant to ORS 659A.885.

7.      **On Plaintiffs' Ninth claims (Aiding and Abetting)**, enter judgment against Defendants and in favor of Plaintiffs for compensatory damages of at least $25,000 per Plaintiff, or such other amounts shown at trial, or, in the alternative, statutory damages of $200 per violation pursuant to ORS 659A.885.

8.      Award Plaintiffs reasonable attorney fees and costs under ORS 20.082 (for Plaintiffs Francisco Acuña, Martí Ars, Simón de Llamas, Pau Sáez, and Paola Torreño), ORS 652.200, ORS 652.150, ORS 653.055(4), ORS 659A.885(1), 29 U.S.C. § 216(b) and 42 U.S.C. § 12205.

9.      Award Plaintiffs pre-judgment interest and post-judgment interest as allowed by law; and

10.     Award Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted this 2nd day of November 2023 by:

OREGON LAW CENTER
LEGAL AID SERVICES OF OREGON

s/ Laurie Hoefer
**Laurie Hoefer, OSB  054234**
laurie.hoefer@lasoregon.org
**Brenda Bradley, OSB 060453**
Brenda.bradley@lasoregon.org
Legal Aid Services of Oregon
397 N 1st St.

Woodburn, OR 97071
Telephone: (503) 981-5291
Fax: (503)981-5292

Of Attorneys for Plaintiffs


Julie R. Samples, OSB 014025
jsamples@oregonlawcenter.org
Oregon Law Center
138 NE 3rd Street, Suite 230
Gresham, OR 97030
Telephone: 503 726-4381
Fax: 503 726-4382

Stephen S. Walters, OSB 801200
swalters@oregonlawcenter.org
Oregon Law Center
522 SW 5th Ave, Suite 812
Portland, Oregon 97204
Telephone: 503 473-8311
Fax: 503 295-0676

Of Attorneys for Roberto Morlans